UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>EMPIRE STATE CONGLOMERATES, INC.,<br><br>                                        Debtor. | Chapter 11<br><br>Case No.<br>15-10061-smb |

## DECLARATION PURSUANT TO LBR RULE 1007-2 IN SUPPORT OF THE DEBTOR'S VOLUNTARY CHAPTER 11 BANKRUPTCY PETITION

Paul A. Peterson, a person over the age of 18, swears to the truth of the following:

1.    I am the President of Empire State Conglomerates, Inc. ("ESC" or the "Debtor"), the Debtor herein, and am fully familiar with the facts and circumstances described herein.

2.    I make the Declaration in support of the Debtor's voluntary petition under Chapter 11 of 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code").

3.    ESC is a corporation duly organized under the laws of the State of New York.

4.    ESC had been formed to purchase and own 81 cooperative apartments in the building 87-10 51st Avenue, Elmhurst New York (the "Co-op") when the Sponsor, Summit House Associates, decided to sell in a bulk transaction its remaining units at the property.

5.    From 2008 to 2012 ESC managed its 81 apartments in the Co-op.

6.    The original shareholders on March 27, 2008 were James Sheehan and Paul A. Peterson. The same persons are currently shareholders.

7. The original officers on March 27, 2008 were James Sheehan and Paul A. Peterson. Currently only Paul A. Peterson is an officer.

8. On July 5, 2009, the Co-op filed a voluntary petition for protection under chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the Eastern District of New York (Case No. 09-45657-ess). In the Co-op's bankruptcy proceeding, the Creditor's Committee and certain minority shareholders asserted claims against ESC relating to ESC's ownership of the 81 apartments and obligations due the Co-op.

9. In a Settlement Agreement ("Settlement") on consent between various parties including ESC, that was approved by the Bankruptcy Court in the Co-op's case. A copy of the so-ordered Settlement is annexed hereto as **Exhibit "A".** Pursuant to the Settlement, ESC transferred to a "new Entity" subsidiary of the Co-op 79 of the Co-ops and kept 2 apartments (the "ESC Apartments") in exchange for the Co-op and its secured lenders, and others releasing all claims they may have held against ESC. (See Settlement, p. 7) Further, as part of the Settlement, ESC was not required to make any maintenance or other payments on the ESC Apartments in the future unless such units became rented in consideration of the millions of dollars worth of apartments being transferred. Additionally, ESC contends that the transfer of the units was predicated on conditions that the Co-op and its "New Entity" subsidiary would adhere to the specific conditions of the Settlement which never happened at and after the closing transfer of the 79 units, specifically that the "New Entity" would be solely responsible for all the obligations ESC had been responsible for including monthly loan payments to the Co-op on its two former promissory notes, maintenance charges, etc. to the Co-op and that such obligations would never be put upon ESC or the rest of the shareholders of the Co-op. ESC recently had

started an action in New York State Supreme Court to seek the return of the 79 units on various legal grounds for violations of these specific conditions of transfer contained in the Settlement.

10. One of the apartments (5R) was rented to a tenant since the date of the Settlement. As of the Filing Date, the other apartment (2S) remains unrented. Accordingly, ESC's maintenance obligation to the Co-op is solely for unit 5R at $868.80 per month initially and $1,067.90 per month currently.

11. As of the Filing Date ESC owes approximately $30,137.40 in maintenance fees to the Co-op, which it believes is offset by $50,000 credit, among others, that have not been applied by the Co-op.

12. Throughout ESC's involvement in the Co-op's bankruptcy as a shareholder thereof, it was primarily represented by the law firm Kudman Trachten Aloe, LLP ("KTA"). On June 12, 2012, While KTA represented ESC, it obtained from ESC an improper confession of judgment in the amount of $224,274.95 (the "KTA Judgment").

13. ESC's total outstanding liabilities, including the KTA Judgment is approximately $325,000.

14. KTA as former counsel to ESC was under the Settlement supposed to act an escrow agent holding the two stock certificates corresponding to unit 5R and 2S. Despite the fact that counsel was eventually changed by ESC during the Co-op's final bankruptcy hearings before the case was closed, KTA did not transfer the escrow responsibility to ESC's new counsel despite requests to do so.

15. On August 18, 2014 KTA assigned the KTA Judgment to 87-10 Operating LLC ("87-10 Operating"), an entity that has filed several new amendments with the NYS Attorney General to sell individually the 79 units (originally belonging to ESC) to the general public in the State of New York. It also, through a related entity, ABC Properties Management, is also managing the Co-op and is allegedly improperly in control of the Co-op's Board.

16. From the date of the closing on the Settlement (on or about July, 2012) until the Filing Date, ESC has sought to sell the unit(s) to meet its current obligations, but lack of a certified audited financial statement for the Co-op had prevented this from occurring.

17. In a public offering filed with the NYS Attorney General's office, 87-10 Operating has valued the unit directly above 5R, unit 6R, at well over $520,000 renovated. Accordingly, 5R just beneath is estimated to sell for at least $500,000 un-renovated.

18. Apartment 5R has been listed since the closing on the Settlement to date with a broker for sale. Yet only recently has an audited financial statement been made available by the Co-op.

19. On October 15, 2014, 87-10 Operating, as assignee, sought the execution of the KTA Judgment against the ESC Apartments.

20. On January 13, 2015 (the "Petition Date") ESC filed this Bankruptcy proceeding to stay the execution of the KTA Judgment and conduct an orderly liquidation of ESC's apartment 5R for the maximum sale price possible.

21. This case was not originally filed as a Chapter 7 or Chapter 13 Bankruptcy Proceeding.

22. Neither the Debtor nor its Principals are now or ever have been a debtor in any bankruptcy case.

23. No committees of the Debtor's creditors or equity holders have been formed pre-petition.

24. Filed contemporaneously herewith is a true and accurate list of the creditors holding the 20 largest unsecured claims against the Debtor.

25. Filed contemporaneously herewith is a true and accurate list naming no creditors as holding any secured claims against the Debtor.

26. Annexed hereto as **Exhibit "B"** is a true and accurate copy of the Debtor's Balance Sheet as of January 1, 2015.

27. There are no securities of the Debtor that are publicly traded.

28. Attached hereto as **Exhibit "C"** is the Debtor's projected cash receipts and disbursements for the 30 days following the Petition Date. During this time the Debtor does not have any payroll obligations and does not intend to pay any officer, director or stockholder.

Dated: January 18, 2015

_____
Paul A. Peterson