```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                 :
                                                       :
EMPIRE STATE CONGLOMERATES,                            :   Chapter 7
INC.                                                   :   Case No. 15-10061 (SMB)
                                                       :
                          Debtor.                      :
--------------------------------------------------------X
```

### MEMORANDUM DECISION DENYING MOTION
### TO DISQUALIFY THE TRUSTEE AND HER COUNSEL

**A P P E A R A N C E S:**

ZINKER & HERZBERG, LLP
*Counsel for Paul A. Peterson*
300 Rabro Drive, Suite 114
Hauppauge, NY 11788

      Jeffrey Herzberg, Esq.
           Of Counsel

TARTER KRINSKY & DROGIN LLP
*Counsel for the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, NY 10018

      Deborah J. Piazza, Esq.
      Robert A. Wolf, Esq.
      Jill Makower, Esq.
           Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

       Paul A. Peterson ("Peterson"), a former officer and shareholder of the debtor Empire State Conglomerates, Inc. ("Empire"), has moved to disqualify the chapter 7 trustee, Deborah J. Piazza, Esq. (the "Trustee") and her counsel, Tarter Krinsky & Drogin LLP ("Tarter"), and invalidate certain settlement agreements entered into by the Trustee. (*Motion to Disqualify Chapter 7 Trustee and Her Counsel*, dated Sept. 22, 2015 (the "*Motion*") (ECF Doc. # 49).) The

catalyst for the *Motion* was Tarter's hiring of five attorneys who had previously worked at another law firm, Todtman, Nachamie, Spizz & Johns, P.C. ("Todtman"). Todtman represented the Official Committee of Unsecured Creditors (the "Committee") in an earlier bankruptcy case, *In re 87-10 51st Avenue Owners Corp.*, No. 09-45657 (ESS) (Bankr. E.D.N.Y.). That case involved contentious proceedings between the Committee on the one hand and Empire and Peterson on the other.

For the reasons that follow, the *Motion* is denied.

**BACKGROUND**

**A.     The 87-10 51st Avenue Owners Corp. Bankruptcy Case and Related Litigation**

At the beginning of this story, 87-10 51st Avenue Owners Corp. (the "Co-op") was a residential co-op in which Empire owned the shares and held the proprietary leases relating to eighty-one apartments or units. On July 5, 2009, the Co-op filed a chapter 11 case in the United States Bankruptcy Court for the Eastern District of New York (the "Co-op Bankruptcy Case"). Peterson was a member of the Co-op's board of directors as well as a shareholder and officer. Following its appointment, the Committee filed an application to employ Todtman. (*Application for an Order Authorizing the Official Committee of Unsecured Creditors to Retain Todtman, Nachamie, Spizz & Johns, P.C. as Counsel*, dated Sept. 22, 2009 (E.D.N.Y. ECF Doc. # 84).)[1] Alex Spizz ("Spizz") was a member of Todtman at the time and signed an affidavit in support of the application. Bankruptcy Judge Stong approved the application on October 23, 2009. (*Order*

---

[1] References herein to E.D.N.Y. ECF Doc. # ___ refer to the docket of the Co-op Bankruptcy Case, Case No. 09-45657 (ESS), in the United States Bankruptcy Court for the Eastern District of New York. References herein to NYSCEF Doc. # ___ refer to the docket of *Empire State Conglomerates, Inc. v. 87-10 51st Avenue Owners Corp.*, No. 653618/2014 in the New York State Supreme Court, New York County. Other ECF Doc. #s refer to the instant case, Case No. 15-10061 (SMB).

*Authorizing the Official Committee of Unsecured Creditors to Retain Todtman, Nachamie, Spizz & Johns, P.C.*, dated Oct. 23, 2009 (E.D.N.Y. ECF Doc. # 99).)

On May 25, 2011, Todtman filed a motion on behalf of the Committee seeking leave to prosecute, and if appropriate, settle certain causes of action against "Empire and others" due to the Co-op's apparent unwillingness to do so. (*Motion of the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 1103(c) and 1109(b) for Entry of an Order Granting Leave, Standing and Authority to Prosecute and, If Appropriate, Settle Causes of Action On Behalf of the Debtor's Estate*, dated May 25, 2011 ("*Standing Motion*"), at ¶¶ 25-26, 36 (E.D.N.Y. ECF Doc. # 276-1).) The *Standing Motion* charged that Robert Clausell and Nicholas Dovas, officers of the Co-op, had caused the Co-op to borrow nearly $8 million and lend the funds to Empire to enable it to buy eighty-one units in the Co-op. (*Standing Motion* at ¶¶ 8-10.) In exchange, the Co-op received unsecured fixed interest rate promissory notes. (*Standing Motion* at ¶ 13.) The Committee contended that the transaction was a constructive fraudulent transfer, and sought leave to pursue the claim and impose a constructive trust on the co-op unit shares. (*Standing Motion* at ¶ 25-26.)

The Court subsequently confirmed the Co-op's plan of reorganization (the "Co-op Plan"). (*Findings of Fact and Conclusions of Law Relating to, and Order (this "Order") Confirming, Joint Plan of Reorganization for 87-10 51st Avenue Owners Corp. (the "Debtor") Filed by 87-10 51st Avenue Owners Corp., NCB, FSB ("NCB") and the Official Committee of Unsecured Creditors (the "Committee") Under Chapter 11 of the Bankruptcy Code*, dated Sept. 22, 2011 (E.D.N.Y. ECF Doc. # 343).) Among other things, the Co-op Plan provided for the continuation of the Committee post-confirmation, and, thereafter, the court entered a consent order granting the relief sought in the *Standing Motion*. (*Consent Order Granting the Official Committee of*

*Unsecured Creditors Leave, Standing and Authority to Prosecute Claims Against Empire State Conglomerates, Inc. and Others, and If Appropriate to Settle Causes of Action on Behalf of the Debtor's Estate*, dated Mar. 22, 2012 ("*Standing Order*"), at 2 (E.D.N.Y. ECF Doc. # 485).) Thus, the Committee had the authority to "pursue claims against [Empire] and others in connection with the transfer of 81 apartment units . . . to Empire described . . . in the [*Standing Motion*]." (*Standing Order* at 1.)

In the meantime, on December 15, 2011, the Committee filed a motion signed by Spizz seeking to expunge Empire's administrative claim. (*Objection to Claim of Empire State Conglomerates, Inc. Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure*, dated Dec. 13, 2011 ("*Administrative Claim Objection*") (E.D.N.Y. ECF Doc. # 392).) The *Administrative Claim Objection* argued that Empire's claim was based on pre-petition payments made in anticipation of the Co-op's chapter 11 case, rather than post-petition transactions. (*Id.* at 3.) A February 26, 2013 docket entry indicates that the *Administrative Claim Objection* was ultimately settled. (*Text Order*, entered Feb. 26, 2013 (E.D.N.Y. ECF) (indicating that the *Administrative Claim Objection* was "Settled - MARKED OFF, IT IS SO ORDERED BY s/Elizabeth S. Stong.").) The Co-op Bankruptcy Case docket does not reflect any further dispute regarding Empire's claim in that case.

In addition, on December 27, 2011 and January 6, 2012, the Committee filed two motions that implicated Empire.[2] The first (the *Motion to Compel*) alleged that the Co-op had interfered

---

[2] *Motion Seeking to Compel Debtor to Comply with the Terms of Confirmed Plan of Reorganization*, dated Dec. 23, 2011 ("*Motion to Compel*") (ECF Doc # 397); *Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order (I) Advancing the Hearing Date for the Committee's Motion (ECF No. 397) Filed on December 28, 2011 Seeking an Order Compelling the Debtor to Comply with the Terms of the Plan of Reorganization, (II) Authorizing J&C Lamb Management Corp. as Outside Property Manager Under the Plan to Send, on Behalf of the Board of Directors, Notice to All Rental Tenants of Empire State Conglomerates, Inc. That All Rental Payments Due are to be Payable to the Reorganized Debtor c/o J&C Lamb Management Corp., (III)*

4

with or failed to comply with a number of provisions of the Co-op Plan, including the failure to collect required payments from Empire, interference with the outside property manager authorized by the Co-op Plan, and failure to execute a mortgage in favor of unsecured creditors. (*Affidavit of Alex Spizz in Support of the Motion to Compel*, dated Dec. 23, 2011, at ¶¶ 11, 13-15 (E.D.N.Y. ECF Doc. # 397-1).)  The *Motion to Compel* sought (i) authority to execute and file a mortgage on behalf of the Co-op, (ii) an injunction prohibiting the Co-op from interfering with the outside property manager, and (iii) an injunction prohibiting the Co-op from making disbursements unless authorized by the outside property manager.  (*Id.* at 5.)

The second motion (the *Emergency Motion*) alleged that Empire had failed to make payments owed to the Co-op (over $300,000 was allegedly past due at the time of the motion), and the Co-op had failed to take action to collect the amounts owed.  The *Emergency Motion* and Spizz's supporting affidavit further alleged that "there is evidence that the [Co-op], its Board of Directors and Clausell have removed books, records, computers and other financial information from the [Co-op]'s offices and secreted those records to two (2) apartments owned by Empire so that they would not be available to the [outside property manager]."  (*Affidavit of Alex Spizz Pursuant Local Rule 9077-1*, dated Jan. 6, 2012 ("*Spizz Affidavit*"), at ¶ 3 (E.D.N.Y. ECF Doc. # 404-3); *see also Emergency Motion* at ¶ 13.)  The *Emergency Motion* requested, among other things, an order directing the Co-op, its directors, its employees, Clausell, and Empire to turn over all of the Co-op's books and records.  (*Emergency Motion* at ¶ 12.)

---

*Compelling the Debtor, Its Board of Directors, Its Officers, Employees and Robert Valdes Clausell to Turnover Any and All Books Records and Computers of the Debtor to J&C Lamb Management Corp., and (IV) Enjoin Robert Valdes Clausell and the Debtor from Disbursing and Transferring Funds of the Debtor Including, but Not Limited to, the Proceeds from the Nextel Settlement*, filed Jan. 6, 2012 ("*Emergency Motion*") (ECF Doc. # 404).

5

The relief sought by the Committee in the *Motion to Compel* was granted on consent, and required the Co-op to execute a subordinated mortgage and lien subordination agreement, cooperate with the outside property manager, and refrain from making payments of any kind without advance authorization from the outside property manager.  (*Order Pursuant to 11 U.S.C. §§ 105(a) and 1142(b) to Compel Debtor to Comply with the Terms of Confirmed Plan of Reorganization*, dated Jan. 24, 2012 (E.D.N.Y. ECF Doc. # 433).)  The Court also signed a consent order which denied, without prejudice, the *Emergency Motion*, but also directed the Co-op, its board of directors, its officers, its employees, and Clausell to turn over the Co-op's books and records to the outside property manager.  (*Consent Order Directing Debtor to Turn Over Books, Records, and Computers*, dated Jan. 27, 2012, at 2 (E.D.N.Y. ECF Doc. # 440).)

**B.     The 2012 Settlement Agreement**

On May 25, 2012, Empire, the Co-op, the Co-op board, the Committee and others entered into an agreement (the "2012 Settlement Agreement") settling the claims *inter se*.[3]  The 2012 Settlement Agreement provided, *inter alia*, that Empire would transfer its ownership interest in seventy-nine units to a new entity created by the Co-op.  (*Id.* at ¶ 2.)  Empire would place the shares associated with the other two units (the "Retained Units") in escrow, sell the Retained Units "as soon as practicable," retain up to $350,000 from the sales proceeds, and distribute the proceeds in accordance with the agreement.  (*Id.* at ¶ 3.)  Finally, the Co-op's board resigned and new board elections would be scheduled.  (*Id.* at ¶¶ 4-5.)

The 2012 Settlement Agreement also contained mutual releases.  Except for the obligations under the 2012 Settlement Agreement itself, the Committee and the Co-op, among

---

[3]     A copy of the 2012 Settlement Agreement is annexed to the *Motion* as Exhibit D.

6

others, released Empire and its "officers, managers, directors, employees, members, partners, representatives, attorneys, predecessors, successors and assigns" (except for Clausell) from "any and all claims," including the claims that the *Standing Order* had authorized the Committee to pursue. (*Id.* at ¶ 7.) The Committee, Empire and the Co-op's board granted a similar release to the Co-op and its officers and directors, (*id.* at ¶ 8), and Empire, the Co-op and the Committee likewise released the members of the Co-op's board. (*Id.* at ¶ 9.) Thus, the 2012 Settlement Agreement resolved, released and discharged the Co-op's, the Committee's and Empire's claims against each other as well as the Co-op's officers, directors and board members. Judge Stong approved the 2012 Settlement Agreement, (*Order Approving Stipulation of Settlement Among the Official Committee of Unsecured Creditors, the Debtor, NCB, FSB, the Shareholders and Empire State Conglomerates, Inc.*, dated June 29, 2012 ("*2012 Settlement Order*"), at 1 (E.D.N.Y. ECF Doc # 566), and entered a final decree closing the case on November 4, 2013. *See Clausell v. 87-10 51st Ave. Owners Corp.*, No. 14 Civ. 02691 (RJD), 2014 WL 5591064, at *2 (E.D.N.Y. Nov. 3, 2014) (affirming denial of motion to reopen the Co-op Bankruptcy Case).

The respite was temporary, and new litigation ensued. On November 21, 2014, Empire filed a suit (the "Empire Action") against the Co-op, Jacinto Chua, and Joel E. Miller, Esq. in the New York State Supreme Court, New York County. (*Empire State Conglomerates, Inc. v. 87-10 51st Avenue Owners Corp.*, No. 653618/2014, RJI filed Nov. 21, 2014 (N.Y. Sup.).) The thrust of the complaint was that the defendants breached the 2012 Settlement Agreement by charging Empire and similarly situated shareholders for amounts payable by, 87-10 Operating LLC, the transferee of the seventy-nine units and failed to credit Empire for over $50,000 in payments. (*Verified Complaint*, dated Nov. 20, 2014, at ¶¶ 9-10 ("*Complaint*") (NYSCEF Doc. # 1).) Empire also alleged that the Co-op and its managing agents had failed to provide access to the

7

Co-op's books and records. (*Id.* at ¶¶ 11-12.) The First Cause of Action asserted a claim for breach of contract and breach of fiduciary duty relating to the inspection of the Co-op's books and records. The Second Cause of Action referred to fraud but did not specify the fraud other than a general allegation that the defendants intentionally refused to abide by the Cooperative Conversion Offering Plan, Empire's proprietary leases, the bylaws, the Co-op's certificate of incorporation and the 2012 Settlement Agreement. Peterson verified the *Complaint*.

### C.    The Empire Bankruptcy Case

On January 13, 2015, Empire filed its chapter 11 petition in this Court. (*Voluntary Petition*, dated Jan. 13, 2015 (ECF Doc. # 1).) By order dated March 26, 2015, the case was converted to chapter 7, (*Reply to the Opposition to the Motion to Remove Trustee and the Vacatur and Expungement of the Order Authorizing Employment of Attorneys for Trustee*, dated Oct. 14, 2015 ("*Reply*"), at Ex. D (ECF Doc. # 54)), and the United States Trustee appointed Piazza, a partner at Tarter, as interim chapter 7 trustee. (*Notice of Appointment of Trustee Deborah J. Piazza, Esq.*, dated Mar. 27, 2015 (ECF Doc. # 27).) Piazza subsequently became permanent trustee by operation of law. *See* 11 U.S.C. § 702(d).

Approximately two weeks later, Spizz became a partner at Tarter, and several other attorneys formerly with Todtman also joined Tarter. (*Affirmation in Opposition to Motion of Paul A. Peterson to Disqualify Chapter 7 Trustee and Her Counsel*, dated Oct. 12, 2015, at ¶ 18 (ECF Doc. # 51).) Soon thereafter, the Trustee filed an application to retain Tarter as her counsel, (*Application for an Order Authorizing the Retention of Tarter Krinsky & Drogin LLP as Counsel to the Trustee*, dated Apr. 14, 2015 ("Tarter Retention Application") (ECF Doc # 31)), and the Court granted the motion the next day. (*Order Authorizing Retention of Tarter Krinsky*

8

*& Drogin LLP as Counsel to the Trustee Pursuant to 11 U.S.C. § 327 and Federal Rule of Bankruptcy Procedure 2014*, dated Apr. 17, 2015 (ECF Doc. # 32).)

The *Tarter Retention Application* did not disclose the involvement of Spizz or Todtman in the Co-op Bankruptcy Case. A few days later, however, Tarter partner Robert A. Wolf, Esq. filed a *Supplemental Affirmation of Disclosure with Respect to the Trustee's Retention of Tarter Krinsky & Drogin LLP as Counsel to the Trustee*, dated Apr. 22, 2015 ("*Supplemental Disclosure*") (ECF Doc. # 33), which disclosed that "several attorneys" from Todtman had joined Tarter, Todtman had previously represented the Committee in the Co-op Bankruptcy Case, and the Co-op was an unsecured creditor based upon alleged arrearages owed by the Debtor. Wolf stated that he had spoken with Spizz regarding Todtman's involvement in the Co-op Bankruptcy Case, had reviewed Todtman's involvement in the Co-op Bankruptcy Case, and had concluded that Todtman's representation of the Committee "did not involve issues or positions that would be adverse to the interests of the Trustee or the Debtor's estate in the instant bankruptcy case." (*Supplemental Disclosure* at ¶ 3.)

### 1. The Trustee's Settlement of the Empire Action

On June 2, 2015, the Trustee entered into a stipulation withdrawing with prejudice Empire's claims against Miller in the Empire Action. (*Stipulation of Discontinuance as Against Defendant Joel E. Miller*, dated June 2, 2015 ("*Miller Stipulation*") (NYSCEF Doc. # 10).) In mid-September, she entered into a stipulation with the Co-op, 87-10 Operating LLC, and National Cooperative Bank/NCB, FSB, a secured creditor, to settle the Empire Action (the "Empire Action Stipulation").[4] Under the settlement, the Co-op agreed to pay $10,000 to the

---

[4] The Empire Action Stipulation is annexed as Exhibit A to the *Chapter 7 Trustee's Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving Stipulation and Order Between Deborah J. Piazza,*

9

Trustee, and the Trustee agreed to sell Empire's interests in the Retained Units, distribute the proceeds of the sale in a specified manner and release the Co-op and its current board members, its attorneys and current agents. The Trustee thereafter filed a stipulation discontinuing the Empire Action without prejudice, (*Stipulation of Discontinuance Without Prejudice*, dated Nov. 19, 2015 (NYSCEF Doc. # 12)), and filed the *Approval Motion* seeking approval of the Empire Action Stipulation on the same day.

### 2. Peterson's Opposition and Motion

Four days after the Trustee's execution of the Empire Action Stipulation, Peterson filed the instant *Motion* to remove the Trustee, disqualify her counsel and invalidate any agreements she entered into relating to the Empire Action. In the main, the *Motion* argued that Tarter and/or former attorneys from Todtman who are now employed by Tarter had represented the Committee in the Co-op Bankruptcy Case, (*Motion* at ¶¶ 6, 9), the Trustee and Tarter were not "disinterested" within the meaning of Bankruptcy Code Section 327, (*Motion* at ¶¶ 9, 20), and the *Tarter Retention Application* failed to disclose conflicts or potential conflicts of interest. (*Motion* at ¶ 14.) In arguing that the Trustee and Tarter were not disinterested, the *Motion* pointed to allegations that Spizz and the Committee had made in the Co-op Bankruptcy Case in support of the *Standing Motion* and the *Emergency Motion* and predicted that he would be a witness in the Empire Action. (*Motion* at ¶¶ 12, 13.) The *Motion* also charged that the Trustee's application to retain Tarter as her counsel did not disclose Tarter's relationship to Todtman and Spizz and their connection to the Co-op Bankruptcy Case. (*Motion* at ¶¶ 14-15.) Finally, the *Motion* maintained that the Trustee had refused his invitation to prosecute the valuable claims on

---

*as Chapter 7 Trustee and 87-10 51st Avenue Owners Corp., 87-10 Operating LLC and National Cooperative Bank/NCB, FSB*, dated Nov. 19, 2015 ("*Approval Motion*") (ECF Doc. # 58).

10

behalf of the estate in the Empire Action and subsequently reneged on an agreement to sell the estate's rights in the Empire Action to Peterson for $10,000. (*Motion* at ¶ 16.)

The Trustee's response argued that the disinterestedness test focused on the present, and Peterson had not identified any existing interests that Tarter held or represented that would mandate disqualification. (*Chapter 7 Trustee's and Tarter Krinsky & Drogin LLP's Memorandum of Law in Opposition to Motion of Paul A. Peterson to Disqualify Chapter 7 Trustee and Her Counsel*, dated Oct. 12, 2015, at 3-7 (ECF Doc. # 52).) In addition, Tarter never represented a creditor in the Empire case. (*Id.* at 6.) Finally, Peterson's accusation that the Trustee had failed to disclose the Todtman/Spizz connection ignored the *Supplemental Disclosure*. (*Id.* at 7-8.)

Peterson doubled-down in his *Reply*, and added new charges. He criticized the Trustee's attorney for making the "unfounded allegation" that Empire had never sold its interests in the Retained Units, (*Reply* at ¶ 3), even though he admitted the "unfounded allegation" in his opposition to the motion to convert the case. (*See Declaration of Paul Peterson In Opposition To the Motion for an Order Modifying the Automatic Stay and Converting the Chapter 11 Case to a Case Under Chapter 7*, dated Mar. 19, 2015, at ¶ 9 (ECF Doc. # 24) (stating that Empire filed the chapter 11 case to avoid a sheriff's sale and permit Empire to sell the Retained Units in a commercially reasonable manner).) He reiterated the acrimonious relationship between Empire and the Co-op in the latter's bankruptcy case and referred to the "threatening and unsubstantiated allegations" directed at Empire and its management in that case. (*Reply* at ¶ 4.) He again referred to the "unfounded allegations" by Spizz in the Co-op Case, the absence of any proffer by Spizz, Todtman or Tarter that they "do not hold an economic interest that would create an actual or potential conflict with the Estate," and their predisposition of bias against the Empire

11

estate. (*Id.* at ¶ 10.) The *Reply* also raised the issue of the *Miller Stipulation* as further proof of the Trustee's and Tarter's lack of disinterestedness, (*id.* at ¶ 6), arguing that the Trustee had no right to compromise the estate's claims against Miller without Court approval, which she never sought. (*Id.* at ¶¶ 7-9.)

Finally, forced to acknowledge his erroneous statement that the Trustee had not disclosed Todtman's connection to the Co-op Bankruptcy Case, Peterson contended that the *Supplemental Disclosure* did not count because the Court had already authorized the retention without it. (*Id.* at ¶¶ 11, 15.) Moreover, the *Supplemental Disclosure* was a "white wash" because it did not reveal the accusations that Spizz and Todtman had made against Empire in the Co-op Bankruptcy Case, the authority granted to the Committee to sue Empire and the "underpinnings" of the dispute between Empire and Todtman. (*Id.* at ¶ 12.) Lastly, he complained that Tarter had not laid out the conflicts investigation that it had performed prior to the submission of the *Tarter Retention Application*, and "believed" that before Todtman attorneys joined Tarter, they discussed Todtman's current and recent cases. (*Id.* at ¶ 14.)

## DISCUSSION

### A. Peterson's Motion to Disqualify Tarter

The Bankruptcy Code permits a trustee to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). A professional person is disinterested, *inter alia*, if such person "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). "[C]ounsel will be disqualified under section 327(a) only if it presently 'hold[s] or represent[s] an interest adverse to the estate,'

12

notwithstanding any interests it may have held or represented in the past." *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999). Additionally, a professional person is not disqualified from employment "solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). Accordingly, Bankruptcy Code § 327(c) "prevents disqualification based *solely* on the professional's prior representation of or employment by a creditor—it 'does not preempt the more basic requirements of subsection (a).'" *AroChem*, 176 F.3d at 621 (2d Cir. 1999) (quoting *In re Interwest Business Equip.,* 23 F.3d 311, 316 (10th Cir. 1994)).

The Bankruptcy Code does not define the phrase "hold or represent an interest adverse to the estate," but many courts have adopted the following definition:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*AroChem*, 176 F.3d at 623 (quoting *In re Roberts,* 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in relevant part and rev'd and remanded in part on other grounds,* 75 B.R. 402 (D. Utah 1987); *accord In re Angelika Films 57th, Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998); *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998). The Court must make the determination as to whether a proposed professional holds or represents an adverse interest on a case-by-case basis giving due consideration to the totality of the circumstances. *AroChem*, 176 F.3d at 623; *In re Belmonte*, 524 B.R. 17, 27 (Bankr. E.D.N.Y. 2015); *In re Project Orange Assocs., LLC*, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010).

13

The adverse interest test under Bankruptcy Code § 327(a) speaks in the present tense and only examines present interests. *AroChem*, 176 F.3d at 623-24; *In re M.F. Global Inc.*, 464 B.R. 594, 600 (Bankr. S.D.N.Y. 2011); *Project Orange*, 431 B.R. at 370. Tarter does not presently possess any claims or interests contrary to the estate, and consequently, does not hold an adverse interest within the meaning of § 327(a). *AroChem*, 176 F.3d at 623. In particular, Tarter does not represent any parties in litigation against Empire; and to the extent that Todtman did, or asserted possible claims against Empire in the *Standing Motion*, those matters were settled as part of the 2012 Settlement Agreement.[5] By the time that Tarter was appointed in this case, the Co-op Bankruptcy Case had been closed for nearly a year and a half. Peterson has not alleged any facts that show or imply an ongoing relationship between Spizz (or other Tarter attorneys) and the Committee or any ongoing efforts by the Committee, Todtman, Tarter, or Spizz to pursue claims against Empire. For the same reason, Tarter does not "have" a personal interest materially adverse to the estate or anyone else within the meaning of Bankruptcy Code § 101(14)(C). *See AroChem*, 176 F.3d at 629.

The remaining question is whether Todtman's prior representation of the Committee in the Co-op Bankruptcy Case creates an actual conflict on the part of Tarter within the meaning of Bankruptcy Code § 327(c). An actual conflict of interest is "an active competition between two interests, in which one interest can only be served at the expense of the other." *In re Diva Jewelry Design, Inc.*, 367 B.R. 463, 472 (Bankr. S.D.N.Y. 2007) (quoting *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002)); *see In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr.

---

[5] Peterson's assertion that "[Tarter] represented the unsecured creditors committee in the [Co-op Bankruptcy Case] that was pending before Judge Stong and was apparently a signatory to the [2012 Settlement Agreement]," (*Motion* at ¶ 6), is incorrect. The 2012 Settlement Agreement was not signed by counsel for the Committee, and Tarter was not the Committee's counsel at any point.

14

S.D.N.Y. 1998) ("An actual conflict involves the representation of 'two presently competing and adverse interests,' while a potential conflict occurs where the competition 'may become active if certain contingencies arise.'") (quoting *In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr. N.D. Ill. 1992)).

The Court's review has not identified, and Peterson has not established, any conflict of interest, bias, or prejudice on the part of Spizz, the other former Todtman attorneys, or any Tarter attorneys. The disputes between the Committee and Empire in the Co-op Bankruptcy Case were resolved by the 2012 Settlement Agreement. The post-settlement Empire Action did not involve the Committee, Todtman, Tarter or Spizz. And although Peterson speculates that Spizz would be called as a fact witness in the Empire Action, which has been settled anyway, he does not explain why. The *Motion* does not state that Spizz was involved in the post-settlement activities that formed the basis of the Empire Action or identify an ambiguity in the 2012 Settlement Agreement that might have required clarifying testimony from Spizz.

Furthermore, the statements made by Spizz about Empire and its officers and directors in the course of litigating the Co-op Bankruptcy Case involved factual allegations relating to disputes that are no longer active. They do not evidence an unwillingness or inability on the part of Spizz in particular, and much less Tarter in general, to dispassionately represent the Empire estate's interests. Additionally, even the potential for disloyalty is lacking; Peterson's allegations and the history of the Co-op Bankruptcy Case and related litigation present no material incentive for Spizz (or other former Todtman attorneys) to act contrary to the estate's interests in this Case.

Finally, Peterson has conceded his mistaken charge that the Trustee failed to disclose Spizz's and Todtman's representation of the Committee in the Co-op Bankruptcy Case.

15

Nevertheless, he argues that the *Supplemental Disclosure* was too little and too late. The United States Trustee appointed the Trustee before Spizz and the other Todtman attorneys joined Tarter, and the Trustee filed her application to retain Tarter a few days after they joined. By then, the Co-op Bankruptcy Case had been closed for more than a year, and the underlying disputes that Peterson says should have been disclosed were settled three years before the conversion of the Empire case to chapter 7. This may explain why it did not immediately cross the Trustee's radar. Moreover, the Trustee initiated the *Supplemental Disclosure* only five days after the Court authorized Tarter's retention as her bankruptcy counsel and nine days after Spizz joined Tarter. The Trustee's actions were consistent with her disclosure obligations, and showed a good faith attempt to correct an earlier omission.

Moreover, the timely disclosure of the connection to the Co-op Bankruptcy Case would not have made a difference. The *Supplemental Disclosure* revealed that Todtman had represented the Committee, and the Co-op was an unsecured creditor in the Empire case based on unpaid maintenance on the Retained Units. (*Supplemental Disclosure* at ¶ 2.) The Co-op's interest as a creditor is adverse to the Empire estate. Peterson does not, however, challenge the adequacy of that disclosure, or suggest that Todtman's representation of a constituency that *might* benefit from the payment of the Co-op's claim (depending on the terms of the Co-op Plan) disqualified Tarter.

Rather, he harps on the failure to disclose the long-settled disputes between the Co-op and Empire which form no part of the Co-op's claim for unpaid maintenance. While the *Supplemental Disclosure* could have included more detail, it was not necessary to disclose the information that Peterson claimed was missing. The animus between the Co-op and Empire no longer exists, except in Peterson's eyes. The material facts are that all of the disputes involving

16

the Committee and Empire were settled years earlier, Todtman had not represented the Committee for approximately seventeen months, and neither Todtman nor Tarter currently represented anyone suing Empire or anyone that Empire was suing. Finally, Peterson's "undisclosed" facts are the very same facts that the Court is now reviewing to determine if Tarter was conflicted and should not have been retained. The Court has concluded that Tarter is not conflicted, and in light of that determination, the belated *Supplemental Disclosure* does not, without more, provide a basis for disqualifying Tarter.

**B.     Peterson's Request to Disqualify the Trustee**

A court may remove a trustee for "cause." 11 U.S.C. § 324(a). The Bankruptcy Code does not define "cause," but case law generally requires a showing of fraud or actual injury to a debtor's interests. *Dieffenbach v. Haworth* (*In re Haworth*), 356 F. App'x 529, 530 (2d Cir. 2009) (quoting *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965)); *Surabian v. Picard*, Case No. 13 Civ. 935 (JGK), 2014 WL 917091, at *2 (S.D.N.Y. Mar. 7, 2014); *In re Belmonte*, 524 B.R. 17, 28 (Bankr. E.D.N.Y. 2015); *Pereira v. Foong* (*In re Ngan Gung Restaurant*), 254 B.R. 566, 574-75 (Bankr. S.D.N.Y. 2000). The party seeking to remove a trustee must make a "strong showing because the effect of removal is deleterious to the continuity of the administration of the estate." *In re Carla Leather, Inc.*, 44 B.R. 457, 473 (Bankr. S.D.N.Y. 1984) (internal quotation marks omitted), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985).

Peterson does not allege that the Trustee engaged in fraudulent conduct or caused injury to the estate. Instead, the *Motion* contends that the Trustee should be removed based on her connection to Spizz and other Todtman attorneys, (*Motion* at ¶¶ 8, 12), the Trustee's purported failure to disclose Tarter's conflict of interest, (*Motion* at ¶ 14), the Trustee's decision not to sell the estate's rights in the Empire Action claims to Peterson, (*Motion* at ¶ 16), and positions taken

17

by and statements made by Spizz during his representation of the Committee in the Co-op Bankruptcy Case. (*Motion* at ¶¶ 6-7, 13.) Additionally, Peterson's *Reply* attacks the Trustee's failure to seek Court approval of the *Miller Stipulation*. (*Reply* at ¶¶ 6-7.).

The Court has already concluded that Spizz's and Todtman's prior participation in the Co-op Bankruptcy Case and the belated disclosure of that connection do not supply grounds to disqualify Tarter. As a result, there is no basis to disqualify the Trustee based on Spizz's membership in Tarter.

Peterson's efforts to remove the Trustee based on the settlement of the Empire Action lack merit, but in any event, are now moot. The Court addressed the propriety of the settlement and the Trustee's decision to settle with the Co-op rather than Peterson in connection with the *Approval Motion*. Following an evidentiary hearing, at which Peterson's attorney cross-examined the Trustee, the Court overruled Peterson's objection and approved the Trustee's motion.[6] The Court specifically found, among other things, that paying the Co-op $10,000 was preferable to paying Peterson $10,000. Peterson cannot complain that the price was too low because it was the same price he offered, and he never raised his offer. Furthermore, Peterson's intention to continue litigating the Empire Action would mire the Trustee and the estate in expensive and time-consuming discovery without any benefit to the estate. In short, the Trustee appropriately exercised her business judgment in entering into the Empire Action Stipulation and not selling her claim to Peterson for the same amount. *A fortiori*, the settlement does not constitute cause for the drastic sanction of removal.

---

[6] The Trustee has yet to submit an order approving the settlement.

Similarly, the Trustee's execution of the *Miller Stipulation* without seeking Court approval does not provide cause for her removal. Peterson first mentioned the *Miller Stipulation* in his *Reply*, and the Court need not address the issue at all. *See United States v. Letscher*, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) ("[A]rguments raised in reply papers are not properly a basis for granting relief."). In any event, Peterson has not shown that the *Miller Stipulation* injured the estate. Miller, an attorney, had signed the 2012 Settlement Agreement in his capacity as "counsel for Chua and additional shareholders." (*2012 Settlement Order* at 16; *Complaint* at ¶ 1.) He did not represent the Co-op at that time. The *Complaint* did not identify any obligation imposed on Miller under the 2012 Settlement Agreement or describe how he participated in the breach of that agreement or committed any of the wrongful acts alleged in the *Complaint*.[7] Furthermore, Peterson never articulated the nature of Empire's claims against Miller, and the Trustee concluded that there were none. It is apparent that Empire joined Miller without any factual basis, and the Trustee saw no reason to hold him hostage to a meritless lawsuit. While it would have been more prudent for the Trustee to seek the Court's approval before discontinuing Empire's claims against Miller with prejudice, her failure to do so under the circumstances does not support the ultimate sanction of removal.[8]

Finally, the *Motion* includes numerous, lengthy block quotes from decisions discussing the requirement of disinterestedness and the rules governing the Trustee's removal. (*Motion* at

---

[7]    Empire sought to sidestep this obvious deficiency by pleading that each defendant "committed the same or similar acts attributed to the other named defendants," and "[t]herefore, all acts alleged to have been committed by any of the named defendants are also alleged to have been committed by all other defendants." (*Complaint* at ¶ 6.)

[8]    In addition, the *Miller Stipulation* did not harm the estate. Miller subsequently signed the Empire Action Stipulation as attorney for the Co-op, and that stipulation released the Co-op's attorneys. Thus, even if the Trustee should have sought prior approval of the *Miller Stipulation*, and her failure to do so rendered it a nullity, Miller received the same release under the Empire Action Stipulation, which the Court did approve.

19

¶ 11.) The *Motion* does not allude to the facts of these cases, except as may appear in the extracts themselves, or explain how these are germane beyond their uncontroversial statements of law. Further, the only authority it cites from this Circuit, *Momentum Mfg. Corp. v. Employee Creditors Committee* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132 (2d Cir. 1994), did not concern disinterestedness or the removal of the trustee, and instead, addressed the Court's equitable powers under Bankruptcy Code § 105(a). If Peterson is suggesting that I can or should remove the Trustee under my equitable powers notwithstanding the absence of "cause" as required by Bankruptcy Code § 324(a), he is mistaken. *See Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.") (internal quotation marks and citation omitted).

## CONCLUSION

The *Motion* is denied. The Court has considered the remaining arguments made by Peterson and concludes that they lack merit. Submit order.

Dated: New York, New York
        February 24, 2016

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge